UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
                                                           :
MIKHAIL MARKMAN,                                           :    **CORRECTED**
                                                           :    **MEMORANDUM**
                                    Plaintiff,             :    **DECISION AND ORDER**
                                                           :
           - against -                                     :    13 Civ. 6843 (BMC)
                                                           :
THE CITY OF NEW YORK, et al.,                              :
                                                           :
                                    Defendants.            :
---------------------------------------------------------- X

**COGAN**, District Judge.

This action, seeking damages for false arrest, malicious prosecution, and related claims under 42 U.S.C. § 1983, should never have been brought. The undisputed facts show not only that there was probable cause for plaintiff's arrest, but that if the defendant police officers had not arrested plaintiff, they would have been derelict in their duty. Defendants' motion for summary judgment is therefore granted.

## STATEMENT OF FACTS

The following undisputed facts are taken from the parties' submissions under Local Rule 56.1.

At about midnight on the evening of September 19, 2012, defendant Police Officer Jessi D'Ambrosio and his partner, Police Officer Glenn Pascual (who is not a party to this case) responded to a radio run in the vicinity of 70 New Lane, in Staten Island. They were dispatched to investigate what police call a "10-33," which is the code for a bomb threat or explosive device. Plaintiff, it turned out, had placed several calls that evening to New York's 311 information line and to 911, reporting that he had observed a Russian man and woman tampering with his maroon 1995 Chevrolet Impala. Plaintiff also had told the 911 operators that he had

with him an airline-trained, bomb-sniffing dog, named Brief, and that Brief had alerted him to the scent of explosives beneath his car. He further had told the 911 operators that he had discovered a firearm – likely placed there by the unknown Russians – in his trunk. Although the officers' recollections of the substance of the 311/911 calls at their depositions were imperfect, there is no dispute that during one of his several calls, plaintiff also stated: "Do you want me to start shooting? And maybe the police will be response [sic]."

D'Ambrosio and Pascual investigated the scene and interviewed plaintiff. At some point during this investigation, plaintiff opened the trunk of the car with a key that was, at all relevant times, in his possession. There was no sign of any damage to the trunk lid or lock.[1] Looking into the trunk, D'Ambrosio observed a .22 caliber revolver and several boxes of .22 caliber ammunition. Plaintiff does not have a license to own a gun, and did not assert otherwise. Rather, plaintiff told D'Ambrosio and Pascual that the gun was not his, and must have been placed there by the unknown Russian man and woman he had seen. Plaintiff also told police that nobody else had keys to his car.

D'Ambrosio consulted by phone and radio with his supervisor, defendant Sergeant Dhanan Saminath. Saminath arrived on the scene. Eventually, D'Ambrosio arrested plaintiff for criminal possession of a weapon in the second degree. Plaintiff's Impala was seized, and D'Ambrosio issued plaintiff a Vehicle Seizure Form.[2] D'Ambrosio, as the arresting officer, conveyed the facts of the arrest, including plaintiff's version of events, to an Assistant District

---

[1] Plaintiff asserts an issue of fact as to whether his trunk showed signs of forced entry. There is no genuine issue of material fact. D'Ambrosio testified that he observed "no scratches, dings, dents" and that "[t]he car was in very good, pristine shape." The notebook entry of defendant Sergeant Dhanan Saminath notes "minor dents" and "scratches" on the car. Saminath made no note of any damage to the trunk lid or locking mechanism, and plaintiff has not submitted any evidence that the trunk lock or lid was damaged in any way, let alone enough to show a forced opening.

[2] Civil forfeiture proceedings were later instituted against plaintiff by the Property Clerk of the New York Police Department.

2

Attorney in Staten Island, including that plaintiff had reported a woman placing a firearm into his trunk to 911.

Plaintiff was arraigned on September 21, 2012. At the request of plaintiff's lawyer, the Staten Island Criminal Court remanded plaintiff for a psychiatric evaluation pursuant to New York Criminal Procedure Law Art. 730. Plaintiff was incarcerated until October 17, 2012, when he made bail. The proceedings were dismissed on motion of the District Attorney on August 23, 2013.

## DISCUSSION

### I. Standard of Review

Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quoting Fed. R. Civ. P. 56(c)); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Id. (citation omitted) (quoting Lund's, Inc. v. Chemical Bank, 870 F.2d 840, 844 (2d Cir. 1989)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with specific facts to show there is a factual question that must be resolved at trial. See Fed. R. Civ. P. 56(e); see also Ali v. Bank of New York, 934 F. Supp. 87, 91 (S.D.N.Y. 1996). A nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). In short, a nonmoving party must "do more than

simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).

## II. Plaintiff's False Arrest Claim

The elements of a claim for false arrest under § 1983 are derived from New York law. See Marshall v. Sullivan, 105 F.3d 47 (2d Cir. 1996) (citing Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991)). A plaintiff claiming false arrest must establish that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Id. (citing Broughton v. State, 37 N.Y.2d 451, 373 N.Y.S.2d 87 (1975)).

An arrest is privileged if it is supported by probable cause. Illinois v. Gates, 462 U.S. 213 (1983). Accordingly, probable cause is a complete defense to a claim of false arrest. Covington v. City of New York, 171 F.3d 117, 122 (2d Cir. 1999) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). Probable cause, in turn, exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993) (internal quotation omitted); see also Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995). The test is an objective one; an officer's subjective belief at the time of the arrest is irrelevant. Martinez v. Simonetti, 202 F.3d 625, 633 (2d Cir. 2000). Police officers "are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989). The arresting officer has no duty "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an

4

arrest." Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003). Moreover, a suspect's eventual acquittal is irrelevant to the probable cause inquiry. Finigan v. Marshall, 574 F.3d 61 (2d Cir. 2009).

Because probable cause is an objective inquiry, the crime of which a reasonable officer would suspect a suspect under the circumstances leading up to the arrest need not be the crime – or even closely related to the crime – which is articulated by the arresting officer at the time of the arrest or with which a suspect is ultimately charged. See Devenpeck v. Alford, 543 U.S. 146, 125 S. Ct. 588 (2004). In addition, it is, of course, axiomatic that an arresting officer's direct observation of conduct that would constitute a criminal violation creates sufficient probable cause to arrest. Smart v. City of New York, No. 08 Civ. 2203, 2009 WL 862281 (S.D.N.Y. Apr. 1, 2009) (citing United States v. Scopo, 19 F.3d 777 (2d Cir. 1994)); see also United States v. Vasquez, 864 F. Supp. 2d 221 (E.D.N.Y. 2012); Greenwald v. Town of Rocky Hill, No. 09 Civ. 211, 2011 WL 4915165 (D. Conn. Oct. 17, 2011); United States v. Jackson, 548 F. Supp. 2d 24 (W.D.N.Y. 2008).

Under the New York Penal Law, a person is guilty of criminal possession of a weapon in the second degree when, *inter alia*, "such person possesses any loaded firearm" outside of his home or business. N.Y. Penal L. § 265.03. For purposes of that statute, a person is in constructive possession of an object when he is "able to exercise dominion or control" over it. Chalmers v. Mitchell, 73 F.3d 1262, 1272 (2d Cir. 1996). A firearm is "loaded" for purposes of the New York Penal Law when it "is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm." N.Y. Penal L. § 265.00(15).

5

Under these principles and in light of the undisputed facts, the officers in this case unquestionably had probable cause to arrest plaintiff. After responding to plaintiff's 311 and 911 calls, their investigation revealed, in relevant part, that there was a .22 caliber revolver and one hundred sixty two (162) rounds of ammunition in plaintiff's locked trunk, that he did not have a license for the gun, that he was the only person with a key to the trunk, and that there was no damage to the trunk suggesting forced entry. These undisputed facts, standing alone, constitute direct observation of sufficient information to warrant a reasonable observer to believe that the offense of criminal possession of a weapon had been committed.

None of the disputed facts upon which plaintiff relies in opposing summary judgment are material. For example, plaintiff contends that the record shows that he opened the trunk of his car at the direction of police. Defendants contend that he opened the trunk on his own initiative. I do not see why it matters. Plaintiff consented to open the trunk and the gun and ammunition were in it. Similarly, plaintiff refutes defendants' contention that he appeared drunk. Drunk or not, plaintiff had no permit for the gun in his trunk.

Plaintiff also relies on alleged comments by D'Ambrosio expressing remorse and stating that he did not understand defendant Saminath's reasons for ordering him to arrest plaintiff. There is any number of reasons why an officer on the scene might want to express empathy to a suspect, but it makes no difference. Probable cause is an objective inquiry. See Martinez, 202 F.3d at 633. D'Ambrosio's personal motivations are not relevant.[3]

Plaintiff also portrays several dubious legal arguments as contentions of disputed fact. He urges the Court to find a question of fact as to probable cause because, as the parties agree,

---

[3] Moreover, as defendants correctly point out, an arrest in the face of disagreement between reasonable officers is precisely the situation that is protected by an officer's qualified immunity. See Betts v. Shearman, 751 F.3d 78, 82-83 (2d Cir. 2014) (finding "arguable probable cause" for arrest).

6

the firearm observed by police in plaintiff's trunk was not "loaded" in the plain sense of the term. Rather, he emphasizes, it was found next to several boxes of compatible ammunition. But the statute's definition of "loaded" plainly encompasses the situation observed by the police here. See People v. Gordon, 99 A.D.2d 538, 952 N.Y.S.2d 46 (1st Dep't 2012), leave to app. denied, 20 N.Y.3d 1061, 962 N.Y.S.2d 612 (2013) (table). For the same reasons, the circumstances need not have suggested to the reasonable observer that defendant had the intent to use the firearm unlawfully. Under N.Y. Penal L. § 265.03, the elements of intent to use a firearm unlawfully and possession of a loaded firearm are disjunctive. Moreover, defendants unquestionably had reason to suspect that the circumstances constituted at least criminal possession of a firearm in the fourth degree, which is chargeable when, *inter alia*, a person simply "possesses any firearm." Such a reasonable suspicion, without more, would validate this arrest. See Devenpeck, 543 U.S. at 153-54.

The most heavily-emphasized argument in plaintiff's brief is his contention that the police officers should have taken his statements about the Russian couple and made an on-the-spot decision to accept them as exculpatory under New York's temporary innocent possession doctrine, see People v. Williams, 50 N.Y.2d 1043, 431 N.Y.S.2d 698 (1980).[4] That contention is untenable, and is precisely the opposite of a probable cause inquiry. Affirmative defenses are for the District Attorney to evaluate, not the officers on the scene, unless an affirmative defense is so plainly applicable that no reasonable police officer could fail to accept it. See United States v. Sanchez-Villar, 99 Fed. App'x 256 (2d Cir. 2004), vacated on other grounds, 544 U.S. 1029 (2005).

---

[4] Plaintiff even goes so far as to argue that "to the extent that defendants can credibly contend that they were unaware that plaintiff had called 311 and 911 repeatedly . . . there exists, at a minimum, a material question of fact." I do not see what is material about that.

7

That qualification is certainly not the case here. Probable cause has to be evaluated from the real world scenario that police officers face. Here, the officers heard this wild story about an unnamed Russian couple with no ascribed motive, a bomb-sniffing dog (but no bomb), a gun and ammunition in a trunk, and no gun license displayed by plaintiff. I do not see how anyone can seriously contend that the police officers should have decided: "Well, we accept your story about these unknown Russians planting a gun in your trunk somehow. We will do this even though your bomb sniffing dog thought there was a bomb, and there was not, and we do not know how or why these Russians would have opened your trunk without jimmying the lock or why they would have left a gun and ammunition in your trunk. We will just let you go on your way." This is without even relying on the officers' perception that plaintiff was drunk, or that he had threatened to start shooting in his 311 call if officers did not respond quickly enough for his satisfaction. For these officers to have let plaintiff drive off into the sunset with his gun, ammunition, and dog would have been irresponsible.

### III. Plaintiff's Remaining Claims

To establish a claim for malicious prosecution against an arresting police officer under § 1983, the plaintiff must show, *inter alia*, that the officer initiated a criminal proceeding without probable cause to believe that the proceeding could succeed. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997). Probable cause to arrest is not necessarily determinative of the existence of probable cause to prosecute. See Posr, 180 F.3d 409. Nevertheless, the police officers in this case cannot be liable for any aspect of plaintiff's prosecution after district attorneys became involved. See Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999) ("It is well settled that the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent

judgment. At least that is so in the absence of evidence that the police officer misled or pressured the official who could be expected to exercise independent judgment." (citations omitted)). Thus, the existence of probable cause to arrest also entitles the defendants to summary judgment on plaintiff's malicious prosecution claim.

As to plaintiff's unlawful seizure of property claim, the law governing the constitutionality of vehicle seizures in this Circuit is well-settled. An arrestee whose vehicle is seized as an instrumentality of crime must be afforded an opportunity for a hearing to determine whether probable cause existed for the arrest of the vehicle owner, whether it is likely that the municipality will prevail in an action to forfeit the vehicle, and whether it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture. Fasciana v. Cnty. of Suffolk, 996 F. Supp. 2d 174 (E.D.N.Y. 2014) (discussing Krimstock v. Kelly, 306 F.3d 40 (2d. Cir. 2002), and its progeny). For plaintiff to defeat summary judgment on his Due Process claim, he would have to proffer some evidence that he was not provided notice of his right to a Krimstock hearing at the time that his vehicle was seized.

There is only one piece of evidence in the record that is probative on this question. That evidence is D'Ambrosio's copy of the NYPD Vehicle Seizure Form that he issued to plaintiff, which bears plaintiff's signature below the following statement: "The undersigned acknowledges that on September 20th, 2012 at 1500 hrs., I received the written NOTICE OF RIGHT TO ATTEND HEARING" (capitalization in original). In light of this undisputed evidence, defendants are entitled to summary judgment on this claim.[5]

---

[5] In addition to the claims discussed below, plaintiff also has asserted claims for unlawful seizure of his person and for deprivation of unspecified civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and unspecified violations of the New York State Constitution. The parties' summary judgment papers have not addressed these claims. When an arrest is privileged by probable cause, as here, no claim for unlawful seizure lies. See United States v. Colon, 250 F.3d 130 (2d Cir. 2001) (requiring only "reasonable suspicion" of criminal activity through the eyes of a reasonable and cautious police officer on the scene). The Court takes plaintiff's unspecified civil rights claims to be withdrawn or subsumed by the rulings in this decision.

## CONCLUSION

Defendants' motion for summary judgment is granted. The Clerk is directed to enter judgment, dismissing the complaint.

**SO ORDERED.**

/s/ Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
      October 2, 2014