UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- X
                                                            :
MIKHAIL MARKMAN,                                            :    **MEMORANDUM & ORDER**
                                                            :
                                        Plaintiff,          :    13 Civ. 6843 (BMC)
                                                            :
                    - against -                             :
                                                            :
CITY OF NEW YORK, *et al.*,                                 :
                                                            :
                                        Defendants.         :
----------------------------------------------------------- X

**COGAN**, District Judge.

The Second Circuit substantially affirmed this Court's grant of summary judgment dismissing plaintiff's claims for false arrest, malicious prosecution, and seizure of property under 42 U.S.C. § 1983. Markman v. City of New York, No. 13-cv-6843, 2014 WL 4954593 (E.D.N.Y. Oct. 2, 2014), aff'd in part and rev'd in part, __ F. App'x __, 2015 WL 6643096 (2d Cir. Nov. 2, 2015). Familiarity with the prior proceedings is assumed, but to summarize, this Court found that there was probable cause for plaintiff's arrest, prosecution, and impoundment of his car; the Second Circuit did not reach that issue, finding instead that there was qualified immunity requiring dismissal of the claims against the officers. In addition, the Second Circuit reversed and remanded this Court's dismissal of plaintiff's generally alluded-to claim under the New York State Constitution, which I disposed of summarily in a footnote. The Second Circuit remanded that issue on the ground that this Court had not given plaintiff notice that it would rule on that claim. On remand, this Court has received additional briefing from the parties concerning the remanded claim, and that issue is now ripe for disposition. There is also a motion by plaintiff's counsel to withdraw which I dispose of below.

To supply the necessary background, there is a clarification required as to my prior order dismissing the purported New York constitutional claim. The Second Circuit quoted that portion of my Order stating that "[t]he parties' summary judgment papers have not addressed these claims." What I meant by that was that claims had not been briefed. That did not mean that plaintiff had no notice that defendants were seeking summary judgment of those claims. In fact, defendants' notice of motion specifically recited that it was seeking summary judgment "as to all of plaintiff's claims . . . ." Thus, plaintiff did have notice that all of his claims were being challenged. What my decision meant was that defendants had not devoted any portion of their brief to attacking a New York constitutional claim, and plaintiff had not devoted any portion of his brief to defending one.

It is easy enough to see why defendants did not brief a claim arising under the New York Constitution. The amended complaint was so vague on this point that it was doubtful that plaintiff was pleading such a claim. The amended complaint contained five claims for relief titled as follows: (1) "Deprivation of Federal Civil Rights Under 42 U.S.C. § 1983"; (2) "Unlawful Seizure (Of Person) Under 42 U.S.C. § 1983"; (3) "False Arrest Under 42 U.S.C. § 1983; (4) "Malicious Prosecution Under 42 U.S.C. § 1983"; and (5) "Unlawful Seizure (Of Property) Under 42 U.S.C. § 1983." There is no reference to the New York Constitution in any of these claims. I can hardly fault defendants for not having said more about a claim that was not pled.

So from where did this issue about a claim under the New York Constitution arise? It was simply this Court's effort to make sure, prior to entering final judgment, that there were no loose ends. The impetus for that effort came from the Preliminary Statement in the amended complaint, which stated in its entirety: "Plaintiff brings this action for compensatory damages,

punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions **of the State of New York** and the United States" (emphasis added). That is the only reference to the New York Constitution in the entire amended complaint.

What therefore should have been a non-issue attained a life of its own on appeal. Plaintiff picked up this Court's footnote treatment of the supposed state law claim in his moving brief to the Second Circuit. It was not included in plaintiff's delineation of the issues or argument points his moving brief. But in a footnote to the very last sentence in plaintiff's brief, plaintiff asserted that "since defendants did not move to dismiss" plaintiff's New York State constitutional claims, "there [was] no basis for the court having deemed those claims withdrawn . . . ." Plaintiff asserted that since state law, unlike federal law, permits *respondeat superior* liability, the state and federal claims "are not identical."

Defendants responded to this footnote in their opposing brief on appeal by pointing out that they had moved to dismiss the entire amended complaint; that plaintiff had made no argument to support any New York State constitutional claim in opposition to the motion; that even in plaintiff's first mention of the claim in his appellate brief's footnote, he did not cite the New York constitutional provision upon which he was relying; and that with either a determination of probable cause or qualified immunity, it didn't matter that federal law required *Monell* liability while state law allowed *respondeat superior* liability, because there could be no state constitutional claim under either since the police officers had no liability.

As noted above, the Second affirmed this Court's disposition on all issues except this supposed New York State constitutional claim. As to that, the Second Circuit held:

> The district court here gave no notice of its intention to grant summary judgment on grounds that the defendants did not raise in their briefing below. Accordingly, the grant of summary judgment on Markman's non-federal claims was in error. Of course, having correctly dismissed Markman's federal claims, the district court may, on remand, decline to exercise supplemental jurisdiction over his state claims and dismiss them without prejudice to Markman's ability to pursue them in state court.

We are now on remand. Plaintiff, ironically, is vigorously advancing a claim under the New York Constitution which he never validly stated and, in all likelihood, never had any intention of stating prior to this Court having raised the possibility of such a claim in the footnote to its decision. One who finds humor from time to time in the legal process might find it here, except that defendants and the Second Circuit have had to expend resources to unravel this confusion.

The absurdity is compounded by the bizarre grounds plaintiff now zealously advances to urge survival of this previously spectral claim. First, plaintiff contends that by ruling on the ground of qualified immunity, the Second Circuit implicitly rejected my view that there was probable cause, and thus the state claim survives. That is wrong. Although the Second Circuit referenced the line of cases holding that officers cannot ignore facts in determining probable cause, like Jocks v. Tavernier, 316 F.3d 128, 135 (2d Cir. 2003), the police officers here ignored no facts; they only discounted plaintiff's wild, incredible allegations about unknown Russian bomb planters and Brief, his certified bomb sniffing dog (allegations which ultimately prompted the state court to remand plaintiff for a psychiatric evaluation). The Second Circuit did not hold otherwise. Without a clearer questioning if not rejection of my holding on probable cause, my determination continues to be law of the case. Cf. In re Arab Bank, PLC Alien Tort Statute Litig., ___ F.3d ____, No. 13-3605, 2015 WL 8122895 (2d Cir. Dec. 8, 2015) (grounds of lower

4

court decision remain authoritative unless clearly rejected by appellate decision affirming on other grounds).

Second, plaintiff argues that the Second Circuit was wrong in finding qualified immunity:

> [T]he Second Circuit failed to view the evidence in the light most favorable to plaintiff, and to draw all reasonable inferences and make all credibility assessments in plaintiff's favor. In short, the Second Circuit . . . "improperly weighed the evidence and resolved disputed issues in favor of the moving party," and "failed properly to acknowledge key evidence offered by the party opposing that motion."

(Citations and quotations omitted). Apparently, plaintiff would have me overrule the Second Circuit. I decline.

Third, plaintiff argues that there is a difference between qualified immunity under federal law and governmental immunity under state law. Whether there is or isn't makes no difference in the instant case. Based on the qualified immunity holding in the Second Circuit and this Court's holding as to probable cause, defendants would be equally entitled to governmental immunity. See Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 401 (S.D.N.Y. 2009) ("The only difference between the federal and state doctrines [of qualified and governmental immunity] is that the reasonableness of an officer's action is judged with references to state law and the state, not the federal, constitution.").

In yet another instance of irony, plaintiff contends that defendants should not be able to raise governmental immunity because it was not raised in their answer. I have to reject that, for it would be more than passing strange if plaintiff was allowed to raise a claim that he had barely if at all raised in his complaint, but then defendants were not allowed to raise a defense in the answer that they would have raised if plaintiff had properly pled the claim.

Wisely side-stepping all of the arguments that plaintiff has now raised, defendants advance a very fundamental point that plaintiff has apparently never considered, and which scotches any New York claim that he might have – he never filed a notice of claim, which is a prerequisite to any state law claim of liability. See N.Y. Gen. Mun. Law §§ 50–e, 50–i (McKinney 2013); Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999) ("Notice of claim requirements 'are construed strictly by New York state courts,'" quoting, AT & T Co. v. New York City Dep't of Human Resources, 736 F. Supp. 496, 499 (S.D.N.Y. 1990). I of course do not fault defendants for not raising this on appeal. They could not have, for it was not part of the record, because the claim was barely, if at all, in the case. On remand, plaintiff has put in no reply challenging this dispositive fact.

One final detail on the New York constitutional claim that I have to cover is to answer the question that the Circuit asked me to answer on remand – whether I should simply dismiss the New York constitutional claim without prejudice and allow plaintiff, now that he has been prompted, to bring it in state court. The general rule is that I should. See Castellano v. Bd. Of Trustees, 937 F.2d 752, 758 (2d Cir. 1991). However, based on the history and posture described above, I think that, considering everything that the parties and the federal courts have devoted to this issue, it is within my discretion not to, for, to quote Virgil, "*Claudite iam rivos, pueri, sat prata biberunt*." There is simply no doubt that there is no viable claim under the New York Constitution. It is disposed of entirely by this Court's holding, the Second Circuit's holding, and the threshold procedural failure to file a notice of claim. Plaintiff has displayed a penchant for bringing meritless claims arising out of this weird incident of the unknown Russians and his dog Brief. I see no reason to subject a state court or defendants to further litigation over it.

That brings me then to the motion of plaintiff's counsel to withdraw. (He notes that his withdrawal should be with preservation of his retaining and charging lien.) It is the second motion to withdraw in this case by a lawyer for this plaintiff, and the second one that is supported by an *ex parte* affidavit so as to avoid disclosing privileged communications. Without disclosing those communications in the instant decision, it suffices to say that plaintiff's current counsel is having difficulty contacting his client and equal difficulty getting paid for his work on the appeal, and that he is contemplating legal action against plaintiff. Those might be sufficient reasons to permit withdrawal in the ordinary case. They are not here for several reasons.

First, plaintiff's outlandish allegations of the events giving rise to his initial report to the police – not the police officers' conduct in responding – should have been a tip off to any lawyer that he was dealing with an unreliable client and a case of dubious merit. If that was not enough, the *ex parte* affidavit of the first withdrawing counsel, which current counsel either reviewed or was remiss in not reviewing, should have raised a bright red flag. I will not disclose its contents but it leaves no doubt as to the lack of merit in this case. I thus believe counsel knew or should have known exactly what he was getting into when he agreed to appear in this action, and should not be relieved of that choice simply because the case has gone badly and his client has acted as a reasonable lawyer might well have expected he would act if the case went badly.

As far as the contemplated legal action to collect fees between counsel and his client, I have my doubts about that. Counsel has not annexed a copy of the retainer letter to his motion, nor any unpaid bills, nor has he offered the slightest detail, like the amount owed or time records backing it up, to show that there is a basis for such an action. All that counsel has advised me is that he entered into a retainer agreement to take the appeal – apparently, an unprotected retainer agreement at that. In any event, if counsel is seriously contemplating an action for legal fees

incurred on the appeal, my denial of his motion to withdraw simply means that counsel will have to wait until final resolution of this action before commencing legal action against his client.

That brings me to the last reason for denying counsel's motion to withdraw, which is that as a result of this decision, this case effectively is, or at least should be, over, and once it is, counsel will be able to take any action against his client that he wishes. If there are any further post-judgment proceedings, I am not inclined to unleash this plaintiff as a *pro se* litigant upon a judicial system that has spent considerable resources on him already. He needs counsel to encourage him to act reasonably and discourage him from raising fanciful allegations. I know that has not helped so far but maybe it will going forward.

I may reconsider this ruling if plaintiff is prepared to come to court and testify that he wishes to discharge his counsel. He does, after all, have a right to proceed *pro se* or with other counsel if that is what he wants to do. That right is more compelling than the qualified right of plaintiff's counsel to unilaterally withdraw from an action that ought to be over. If plaintiff's counsel is able to obtain his client's appearance in court for such testimony, he may advise the Court and a hearing will be scheduled.

The Clerk is directed to enter judgment in favor of defendants, dismissing the amended complaint.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
December 23, 2015